NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IRONE WATFORD,<br><br>         Plaintiff,<br><br>    v.<br><br>NEW JERSEY STATE PRISON, et al.,<br><br>         Defendants. | Civil Action No. 16-7878<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE:**

Before this Court is the Amended Complaint of Plaintiff Irone Watford ("Plaintiff"), raising claims pursuant to 42 U.S.C. § 1983, against several supervisory officials, doctors, and nurses at New Jersey State Prison.[1] (ECF No. 8.) Also before the Court is Plaintiff's Motion for the Appointment of Pro Bono Counsel. (ECF No. 7.) Because Plaintiff has been granted *in forma pauperis* status and is a prisoner seeking redress from state employees, the Court is required to screen the Amended Complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. These statutes require the Court to dismiss Plaintiff's claims if they are frivolous, malicious, fail to state a claim for relief, or seek damages from a defendant who is immune. For the reasons set forth below, the Amended Complaint is **DISMISSED WITHOUT PREJUDICE** in its entirety for failure to state a claim for which relief can be granted and Plaintiff's Motion for the Appointment of Pro Bono Counsel is **DENIED WITHOUT PREJUDICE**.

---

[1] The Court previously dismissed Plaintiff's original Complaint (ECF No. 1) for failure to state a claim, and gave Plaintiff leave to amend the Complaint to cure the deficiencies identified in the Court's Opinion. (ECF Nos. 4 & 5.)

I.   **BACKGROUND**[2]

Plaintiff is a prisoner currently incarcerated in New Jersey State Prison in Trenton, New Jersey. (ECF No. 1 at 5.) In 2009, Plaintiff was diagnosed with Hepatitis C. (*Id.* at 8.) In early 2016, he learned that the government had recently approved a drug called Harvoni for use in the treatment of Hepatitis C. (*Id.*) Plaintiff alleges that this drug would cure him of the disease if it were administered to him. (*Id.*) Plaintiff contacted the prison's medical staff in January 2016 and asked to see a specialist doctor, so he could procure treatment with the drug. (*Id.*) Plaintiff saw a doctor[3] on January 30, 2016, but the doctor did not prescribe Harvoni, instead providing Plaintiff with drug tests, vaccinations against Hepatitis A and B, and radiological testing. (*Id.*) According to Plaintiff, the doctor conducted these tests "with the promise of starting treatment after testing" was completed. (*Id.*)

On February 17, 2016, Plaintiff again requested to see a specialist. (*Id.*) Plaintiff was taken to see a specialist doctor, but again received further diagnostic testing rather than immediate treatment with the drug. (*Id.* at 8-9.) Plaintiff continued to request further treatment in March 2016, ultimately leading to a meeting with a prison doctor on March 15, 2016. (*Id.* at 9.) In that meeting, Plaintiff was told that prison doctors and the specialist doctor had discussed the diagnostic tests, but that the specialist doctor "wanted a second MRI test done before starting the treatment with Harvoni." (*Id.*) Plaintiff was therefore scheduled for an MRI in April 2016. (*Id.*) After this second MRI was conducted, however, Plaintiff was told by medical staff that the doctors had decided that a third such test was necessary, and it was scheduled for "sometime next year." (*Id.*)

---

[2] The following factual allegations are taken from Plaintiff's Complaint and Amended Complaint, and are assumed as true for the purposes of this Opinion.
[3] It is not clear from the pleadings if the doctor seen on January 30, 2016 was a specialist.

2

Plaintiff, dissatisfied with that decision, filed medical grievances with the prison administration. (*Id.*) When Plaintiff did not receive a response, he continued to file grievances and, in June 2016, sent letters to the Commissioner of the New Jersey Department of Corrections (the "DOC") and the head of the DOC's medical staff. (*Id.* at 10.) Ultimately, the prison's medical staff sent Petitioner to another specialist doctor, where he was questioned about his background and his health, but did not receive further treatment. (*Id.*) Unhappy with his treatment, on October 26, 2016, Plaintiff filed his original Complaint in this matter alleging the above facts. (*Id.* at 11.) On November 21, 2016, the Court dismissed the Complaint for failure to state a claim, but gave Plaintiff leave to amend the Complaint to cure the deficiencies identified in the Court's Opinion. (ECF Nos. 4 & 5.)

On December 8, 2016, Plaintiff filed the Amended Complaint; the bulk of which is a re-allegation of the above facts, but which does contain certain new facts. (ECF No. 8 at 8-13.) Specifically, Plaintiff alleges he was originally diagnosed with Hepatitis C in 2009 by Dr. Ahsan, who recommended he receive unspecified treatments for his condition. (ECF No. 8 at 10-11.) According to Plaintiff, during the subsequent years from 2009 to 2013, he received vaccination shots for Hepatitis A and B. (ECF No. 8 at 10-11.) It is unclear from the Amended Complaint what additional treatments were prescribed, denied, or offered to Plaintiff between 2009 and 2016. Additionally, although Plaintiff alleges that he began seeking further treatment for Hepatitis C in 2013, Plaintiff alleges no facts regarding any actions he may have taken prior to his initial request in January 2016. (*See id.* at 11.) Plaintiff adds as defendants Dr. Ahsan and several John and Jane Doe nurses from New Jersey State Prison. (ECF No. 8 at 8-10.) Plaintiff also newly alleges that original defendants Mary Lang, Gary Lanigan, and Steven Johnson are all responsible for the

policies and procedures at New Jersey State Prison, that he requested each investigate his failure to receive Harvoni, and that none have taken any action to give him further treatment. (*Id.*)

## II.  LEGAL STANDARD

Pursuant to the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) (the "PLRA"), district courts must review the complaints in all civil actions in which a prisoner is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), or seeks damages from a state employee. *See* 28 U.S.C. § 1915A. The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A. This action is subject to *sua sponte* screening for dismissal, because Plaintiff is a federal prisoner who has been granted *in forma pauperis* status and is seeking redress from a governmental employee. *Id*.

"The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 28 U.S.C. § 1997e(c)(1); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [Plaintiff]." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). However, the Plaintiff's

4

"obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* "Determining whether the allegations in a complaint are plausible is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (citing Fed. R. Civ. P. 8(a)(2)). Moreover, while *pro se* pleadings are liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted) (emphasis added).

**III.    DECISION**

Plaintiff asserts claims for alleged violations of his constitutional rights, pursuant to 42 U.S.C. § 1983. "To establish a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a violation of a right protected by the Constitution or laws of the United States that was committed by a person acting under the color of state law." *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000);

*see also Woodyard v. Cnty. of Essex*, 514 F. App'x 177, 180 (3d Cir. 2013) (explaining § 1983 provides "private citizens with a means to redress violations of federal law committed by state [actors]"). "The first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'" *Nicini*, 212 F.3d at 806 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998)). Here, Plaintiff again attempts to assert a claim for deliberate indifference to his medical needs, based on Defendants' failure to provide him with the drug Harvoni for his Hepatitis C. Plaintiff also seeks to bring a state law claim against Defendants on that same basis.

As the Court explained in the November 21, 2016 Opinion, in order to set forth a plausible claim for relief based on a defendant's deliberate indifference to the plaintiff's medical needs in violation of the Eighth Amendment, a plaintiff must allege both "(i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003). An act or omission amounts to deliberate indifference where the defendant "knows of and disregards an excessive risk to inmate health or safety." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). A medical need is sufficiently serious where it "has been diagnosed as requiring treatment or [is a need that] is so obvious that a lay person would easily recognize the necessity of a doctor's attention." *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987), *cert denied*, 486 U.S. 1006 (1988). "'Where a prisoner has received some medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'" *Everett v. Nort*, 547 F. App'x 117, 121 (3d Cir. 2013) (quoting *United States ex rel. Walker v. Fayette Cnty.*, 599 F.2d 573, 575 n.2

(3d Cir. 1979)). As such, neither a prisoner's personal, subjective dissatisfaction with the care he has been provided, nor his disagreement with the professional judgment of trained medical staff, is sufficient to establish deliberate indifference. *See Hairston v. Director Bureau of Prisons*, 563 F. App'x 893, 895 (3d Cir. 2014); *White v. Napolean*, 897 F.2d 103, 110 (3d Cir. 1990); *Andrews v. Camden Cnty.*, 95 F. Supp. 2d 217, 228 (D.N.J. 2000).

First, as in the original Complaint, the Amended Complaint again alleges Plaintiff is not receiving Harvoni, the treatment he prefers, and is instead being subjected to numerous diagnostic tests and has been sent to see several Hepatitis specialists, all with the promise of eventually receiving Harvoni, if warranted by the tests. Rather than show a denial of treatment, these allegations instead establish that Plaintiff has been treated, continues to receive treatments, and may well receive his desired medication once his doctors are satisfied that such a course is warranted by the diagnostics. As the Court previously ruled, Plaintiff's subjective dissatisfaction with the slow course of his treatment is insufficient to support a claim for relief for a violation of his constitutional rights. *See Everett*, 547 F. App'x at 121; *Hairston*, 563 F. App'x at 895; *White*, 897 F.2d at 110; *Andrews*, 95 F. Supp. 2d at 228. Therefore Plaintiff's § 1983 claims on this basis must once again be dismissed without prejudice as to all Defendants.

Second, to the extent Plaintiff also wishes to raise claims regarding his treatment between 2009 and 2013, Plaintiff has not clearly alleged that he was denied treatment for his Hepatitis C during that time period. According to the Amended Complaint, "[i]n 2009 Dr. Ahsan recommended that Plaintiff begin the treatments for Hep. C." (ECF No. 8 at 11.) However, Plaintiff does not allege specifically what these recommended treatments were. (*Id.*) Instead, Plaintiff vaguely alleges that "[t]his treatment went unheeded by NJSP Medical staff." (*Id.*) Contradictingly, however, Plaintiff also pleads that, at the very least, between 2009 and 2013,

7

Plaintiff was treated with Hepatitis A and B vaccines. (*Id.*) It is unclear from the Amended Complaint if these vaccines were intended to aid in the treatment of Plaintiff's Hepatitis C or were the treatments recommended by Dr. Ahsan. (*Id.*) Consequently, without more specific allegations identifying which of Dr. Ahsan's recommended treatments Defendants failed to implement and clarifying that the vaccines were unrelated to Plaintiff's Hepatitis C treatment, the Amended Complaint does not support a plausible claim that Plaintiff received no treatment for his condition from 2009 to 2013. *See Iqbal*, 556 U.S. at 678. Additionally, to the extent Plaintiff's claims covering 2009 to 2013 are separate from his Harvoni-based claim, those claims may be time-barred, because claims brought pursuant to § 1983 are subject to a two-year statute of limitations, and Plaintiff did not file his initial Complaint until late 2016. *See, e.g., Patyrak v. Apgar*, 511 F. App'x 193, 195 (3d Cir. 2013).

Third, while Plaintiff has now newly named several of his doctors and nurses as defendants, he also again names three high-level supervisors as defendants, Mary Lang, Gary Lanigan, and Steven Johnson (collectively "Supervisor Defendants"), based on their responsibility for the policies and practices at the prison. As the Court previously explained in the November 21, 2016 Opinion, a defendant in a § 1983 case may not be held liable solely on the basis of a *respondeat superior* theory of liability premised on his vicarious responsibility for the actions of his subordinates. *See Iqbal*, 556 U.S. at 676; *see also Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988). Rather, a "defendant in a civil rights action must have personal involvement in the alleged wrongs." *Rode*, 845 F.2d at 1207-08. Generally, a plaintiff seeking to name supervisors as defendants must show each supervisor's participation in the alleged wrongs by pleading either that the supervisor's "establishment of policies, practices or customs . . . directly caused the constitutional violation[,] personal liability based on the supervisor participating in the violation

8

of [the p]laintiff's right, [that the supervisor] direct[ed] others to violate [the p]laintiff's rights, or [that the supervisor had actual] knowledge of and acquiesc[ed] to a subordinate's conduct." *Doe v. New Jersey Dep't of Corr.*, Civ. No. 14-5284, 2015 WL 3448233, at *9 (D.N.J. May 29, 2015) (quoting *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316-20 (3d Cir. 2014), *rev'd on other grounds*, 135 S. Ct. 2042 (2015)); *see also Tenon v. Dreibelbis*, 606 F. App'x 681, 688 (3d Cir. 2015) (§ 1983 Plaintiff pleading supervisory liability must establish defendant's "participation [in the alleged wrong], or actual knowledge and acquiescence, to be liable").

Plaintiff once again alleges little in the way of facts showing Supervisor Defendants' personal involvement in the alleged denial of Plaintiff's treatment. Plaintiff alleges that he asked Supervisor Defendants to investigate his lack of treatment, but received no response. Plaintiff also pleads that each Supervisor Defendant was involved in the development of Hepatitis C treatment policies, which caused the denial of his requests for Harvoni. Plaintiff, however, alleges no facts regarding how any policy instituted by Supervisor Defendants actually "denied" him treatment with Harvoni. And to the contrary, Plaintiff attaches a DOC official medical policy to his Amended Complaint, which specifically states that all DOC facilities shall provide Hepatitis C education, training, testing, and treatment to inmates. (*See* ECF No. 8 at 17-18.) Thus, the only policy identified by Plaintiff directly undercuts Plaintiff's claim, and suggests that the policy makers at his prison have specifically made rules requiring treatment for Hepatitis C, not denying it. Accordingly, Plaintiff's claims against Supervisor Defendants are also dismissed without prejudice for these additional reasons.

Finally, in his Amended Complaint, Plaintiff states an intention to seek relief for the alleged denial of treatment by bringing a claim pursuant to state laws requiring the development of Hepatitis C screening and treatment protocols, specifically N.J. Stat. Ann. § 26:2T-1 *et seq*. To the

9

extent that a private cause of action is permitted under that statute, the Court declines to exercise supplemental jurisdiction over this state law claim as the Court has once again dismissed all of Plaintiff's federal claims over which the Court had original jurisdiction. *See* 28 U.S.C. § 1367(c)(3). The Amended Complaint is, therefore, dismissed without prejudice in its entirety.

Finally, for the same reasons the Court dismisses the Amended Complaint, the Court finds, for the purposes of Plaintiff's Motion for the Appointment of Pro Bono Counsel, that Plaintiff's claims lack arguable merit. *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) ("Before the court is justified in exercising its discretion in favor of appointment, it must first appear that the claim has some merit in fact and law."); *see also Parham v. Johnson*, 126 F.3d 454, 457 (3d Cir. 1997). Accordingly, the Court also denies without prejudice Plaintiff's Motion for the Appointment of Pro Bono Counsel (ECF No. 7).

**IV.   CONCLUSION**

For the reasons stated above, the Amended Complaint (ECF No. 8) is **DISMISSED WITHOUT PREJUDICE** in its entirety for failure to state a claim for which relief may be granted, and Plaintiff's Motion for the Appointment of Pro Bono Counsel (ECF No. 7) is **DENIED WITHOUT PREJUDICE**. An appropriate order will follow.

**Date: January 11, 2017**                    */s/ Brian R. Martinotti*
                                              **HON. BRIAN R. MARTINOTTI**
                                              **UNITED STATES DISTRICT JUDGE**